# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| CHURCHILL DOWNS TECHNOLOGY INITIATIVES COMPANY (d/b/a TwinSpires),<br><br>        Plaintiff,<br><br>   v.<br><br>MICHIGAN GAMING CONTROL BOARD; HENRY L. WILLIAMS, JR., in his official capacity as Executive Director of the Michigan Gaming Control Board; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan,<br><br>        Defendants. | Case No. 1:25-cv-00047<br><br>Hon. Hala Y. Jarbou |

# BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
# TO STAY PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT ........................................................................................................................... 6

    I.    This Court Has Already Held That Defendants' Arguments Are Meritless. .................... 6

        A.    The IHA Preempts Michigan's Licensing Requirement. ................................. 6

        B.    The Attorney General Is A Proper Defendant. ................................................11

    II.    The Other Stay Factors Weigh In Favor Of TwinSpires. ................................................11

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
   567 U.S. 387 (2012) ..........................................................................................................1

*Beame v. Friends of the Earth*,
   434 U.S. 1310 (1977) ......................................................................................................12

*Churchill Downs Inc. v. Thoroughbred Horsemen's Group, LLC*,
   605 F. Supp. 2d 870 (W.D. Ky. 2009) ..........................................................................7, 8

*Coal. to Def. Affirmative Action v. Granholm*,
   473 F.3d 237 (6th Cir. 2006) ..........................................................................................13

*Dahl v. Bd. of Trs. of W. Mich. Univ.*,
   15 F.4th 728 (6th Cir. 2021) ...........................................................................................13

*Exxon Corp. v. Eagerton*,
   462 U.S. 176 (1983) ..........................................................................................................8

*FEC v. Cruz*,
   596 U.S. 289 (2022) ........................................................................................................11

*Huron Mountain Club v. U.S. Army Corps of Eng'rs*,
   545 F. App'x 390 (6th Cir. 2013) ...................................................................................12

*Kentucky v. Biden*,
   57 F.4th 545 (6th Cir. 2023) ...........................................................................................11

*Memphis A. Philip Randolph Inst. v. Hargett*,
   977 F.3d 566 (6th Cir. 2020) ............................................................................................6

*Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*,
   945 F.2d 150 (6th Cir. 1991) ..........................................................................................12

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................1, 2, 5, 11, 13

*Ohio v. EPA*,
   603 U.S. 279 (2024) ....................................................................................................6, 13

*State ex rel. Reading v. W. Union Tel. Co.*,
   57 N.W.2d 537 (Mich. 1953) ............................................................................................9

*Ruckelshaus v. Monsanto Co.*,
    463 U.S. 1315 (1983)......................................................................................................12

*SawariMedia, LLC v. Whitmer*,
    963 F.3d 595 (6th Cir. 2020) ..........................................................................................6

*Thompson v. DeWine*,
    976 F.3d 610 (6th Cir. 2020) ........................................................................................12

*Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees*,
    110 F.4th 870 (6th Cir. 2024) .......................................................................................12

*Williams v. Churchill Downs Tech. Initiatives Co.*,
    Case No. 1:25-cv-173 (W.D. Mich. 21, 2025)................................................................2

**Statutes**

15 U.S.C. § 3001.............................................................................................................6, 7

15 U.S.C. § 3002......................................................................................................8, 9, 10

15 U.S.C. § 3003.................................................................................................................8

15 U.S.C. § 3004.................................................................................................................8

31 U.S.C. § 5362.................................................................................................................9

Mich. Comp. Laws § 206.110..........................................................................................10

Mich. Comp. Laws § 431.308............................................................................................3

Mich. Comp. Laws § 431.317............................................................................................9

Mich. Comp. Laws § 750.301............................................................................................9

## INTRODUCTION

Over a month ago, this Court conducted a comprehensive analysis of the Interstate Horseracing Act of 1978 ("IHA"), finding "Congress established an exclusive, uniform process through which off-track betting systems could accept interstate off-track wagers." ECF No. 19, PageID.460. The IHA's framework is straightforward: So long as TwinSpires obtains the consents of a host racetrack, a host state, and the relevant off-track racing commission, TwinSpires may offer interstate wagering. *Id.* Because of the IHA's "statutory directive[]," states like Michigan may not impose "supplemental requirements" on TwinSpires. *Id.* at PageID.460, 465 (quoting *Arizona v. United States*, 567 U.S. 387, 401 (2012)). But that is exactly what Michigan purported to do with the licensing requirement in Michigan's Horse Racing Law ("MHRL"). This Court accordingly issued a preliminary injunction, enjoining the Executive Director and the Attorney General "from enforcing [Michigan's] licensing requirement—or issuing sanctions . . . —against TwinSpires for accepting wagers from individuals in Michigan on races that take place outside Michigan." ECF No. 19, PageID.474; *see also* ECF No. 20.

Now, Defendants belatedly move for a stay of this Court's order.[1] But the standard for a stay "substantial[ly] overlap[s]" with the standard for granting a preliminary injunction, except now the burden rests on Defendants. *Nken v. Holder*, 556 U.S. 418, 434 (2009). For a stay, Defendants must make a "strong showing" that they are "likely to succeed on the merits," that they will be "irreparably injured absent a stay," that a stay will not "substantially injure" TwinSpires, and that the public interest lies in favor of a stay. *Id.* at 434 (quotation marks omitted). On each

---

[1] Defendants also moved for a stay of proceedings in this Court pending resolution of their interlocutory appeal of this Court's PI order. ECF No. 31, PageID.883. TwinSpires and Defendants conferred further on Defendants' request and agreed to a stipulated stay of certain further proceedings. ECF No. 33, PageID.917. This Court denied this stipulated stay on March 31, 2025. *See* ECF No. 34.

1

factor, however, Defendants do little more than reurge arguments that this Court already rejected in granting TwinSpires's preliminary-injunction motion. The Court should reject these arguments again for substantially the same reasons. Michigan's licensing requirement is preempted by the IHA because Michigan is neither a host of any races nor an off-track state where wagers are accepted. Michigan's attempt to impose an additional licensing requirement "runs contrary to the IHA's exclusive requirements." ECF No. 19, PageID.467. Defendants—who stalled for a month after the issuance of the preliminary injunction before seeking a stay—cannot demonstrate an irreparable injury from being barred from enforcing an unconstitutional law. But, as this Court already found, TwinSpires does face irreparable injury from Defendants' imminent unconstitutional enforcement, including the loss of customer goodwill and competitive position. *See id.* at PageID.472. Under these circumstances, the public interest unquestionably favors this Court's preliminary injunction.

Less than two weeks ago, this Court reaffirmed as much when reiterating that "[t]he preliminary injunction that prevents Michigan officials from imposing sanctions on TwinSpires for accepting wagers from individuals in Michigan on races that take place outside of Michigan remains in effect." Order, *Williams v. Churchill Downs Tech. Initiatives Co.*, Case No. 1:25-cv-173, ECF No. 21, PageID.29 (W.D. Mich. 21, 2025). Defendants offer no persuasive reason why this Court should reverse course at this late date. Accordingly, this Court should deny Defendants' motion to stay this Court's preliminary injunction.

## STATEMENT OF FACTS

Because this Court is familiar with the facts, ECF No. 19, PageID.441–444, 451–63, TwinSpires recounts only the facts necessary to decide this motion to stay.

TwinSpires has lawfully accepted wagers from Michiganders under the Interstate Horseracing Act since the early 2010s. ECF No. 11, PageID.67. But in 2019, Michigan imposed a new licensing requirement for entities, like TwinSpires, that accept wagers electronically. *Id.* at PageID.71. Because this new licensing regime imposed requirements over and above what the IHA requires, TwinSpires has consistently communicated to the Michigan Gaming Control Board (the "Board") that TwinSpires need not comply with those requirements. *Id.*

Even so, to ensure that Michiganders had the opportunity to place wagers without disruption and to achieve positive results for the Michigan horseracing industry, TwinSpires promptly sought a Michigan license when the process became available. *Id.* To obtain a license, TwinSpires had to "have a joint contract with all race meeting licensees and certified horsemen's organizations in th[e] state." Mich. Comp. Laws § 431.308(1)(d)(i). So TwinSpires partnered with Northville Downs, the only remaining in-state racetrack, and with the certified horsemen's associations in 2020. ECF No. 11, PageID.71. Because TwinSpires complied with all applicable state law, TwinSpires operated with a valid Michigan license through 2024. *Id.* at PageID.72.

Despite TwinSpires's consistent compliance and the Board's previous assurance that TwinSpires's license would "remain in good standing," the Board ordered TwinSpires to stop accepting wagers on December 23, 2024. *Id.* at PageID.73–74. Northville Downs allegedly lacked a valid race meeting license under Michigan law for 2025. So, according to Board officials, TwinSpires no longer had the necessary in-state partner to accept interstate off-track wagers in Michigan. *Id.* at PageID.73. Working through Christmas and New Year's Eve, TwinSpires submitted a full response to the Board on December 31, 2024, explaining what TwinSpires had maintained all along: The state had no authority to order TwinSpires to shut down because the

3

IHA preempted the state's licensing regime. *Id.* at PageID.73–74. TwinSpires also explained why the Board misunderstood the relevant state-law requirements. *Id.* at PageID.74–75.

On January 3, 2025, Board staff responded to TwinSpires. ECF No. 1, PageID.16 ¶ 45. While the Board detailed its position on state law, the Board neither acknowledged nor disputed that TwinSpires met the requirements of the IHA. *Id.* Instead, the Board resorted to threats. The Board said that if TwinSpires continued to accept wagers from Michigan residents, TwinSpires would be "subjecting [it]self to administrative, civil, and criminal penalties." *Id.* On January 6, 2025, the Board again demanded that TwinSpires shut off its wagering platform in Michigan with Board staff stating that "things would get worse" for TwinSpires unless it did so. *Id.* at PageID.17 ¶ 46. The Board then pretermitted further discussions. On January 7, 2025, the Board announced that it had "summarily suspended" TwinSpires's license. *Id.* The Board again made no mention of TwinSpires's continuous and ongoing compliance with the IHA. And the Board issued this summary suspension without any prior notice to TwinSpires.

To vindicate its rights under federal law, on January 12, TwinSpires filed a complaint seeking declaratory and injunctive relief in this Court, arguing that the IHA preempts the licensing requirement and that the dormant Commerce Clause also bars such a scheme. *See* ECF No. 1. TwinSpires quickly attempted to confer with Defendants to negotiate a mutually agreeable schedule for consideration of TwinSpires's motion for preliminary injunction, but Defendants refused to engage. *See* ECF No. 9, PageID.35. Given the drastic summary suspension and the resulting irreparable harm if TwinSpires were forced to shut down, TwinSpires filed a motion to expedite briefing and consideration of its preliminary injunction motion on January 17, the same day it filed its motion for a preliminary injunction. ECF No. 9. This Court found "good cause for expedited briefing" and granted TwinSpires's motion to expedite. *See* ECF No. 12, PageID.273.

On February 19, this Court granted TwinSpires's motion for a preliminary injunction on the ground that the "IHA provides the exclusive procedure to accept an interstate off-track wager." ECF No. 19, PageID.469. Thus, "TwinSpires does not need [the Board's] consent" for wagers "placed on an out-of-state race," and Defendants' efforts "to force TwinSpires to obtain an additional" Michigan license are "unconstitutional." *Id.* at PageID.469–70. The Court also found TwinSpires "face[d] a concrete and imminent threat of state action forcing it to cease operations in Michigan," posing "an unconstitutional intrusion on TwinSpires's rights." *Id.* at PageID.472. Moreover, TwinSpires demonstrated it would lose "customer goodwill and its competitive market share" if forced to shut down in Michigan.

Because TwinSpires faced "certain and immediate irreparable harm" and the two remaining preliminary injunction factors also favored equitable relief, the Court enjoined "the Executive Director and the Attorney General from enforcing" Michigan's licensing requirement "or issuing sanctions under [Michigan's Horse Racing Law] against TwinSpires for accepting wagers from individuals in Michigan on races that take place outside Michigan." *Id.* at PageID.474.

Three weeks later, Defendants noticed their appeal to the Sixth Circuit. *See* ECF No. 23. Now, nearly a month after this Court's preliminary-injunction decision, Defendants belatedly seek a stay of that decision.

**LEGAL STANDARD**

In considering whether to grant a motion to stay pending appeal, the Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation marks omitted). "Defendants, as the movants, bear

5

the burden of showing that a stay is warranted under the circumstances." *Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 568 (6th Cir. 2020).

## ARGUMENT

### I. This Court Has Already Held That Defendants' Arguments Are Meritless.

Defendants have demonstrated no likelihood of success on the merits. That fact alone dooms Defendants' motion to stay. *See SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020); *accord Ohio v. EPA*, 603 U.S. 279, 292 (2024). Defendants' preemption arguments fail now for all the same reasons they failed a month ago. Defendants also have no likelihood of success on their attempt to dismiss the Attorney General from this lawsuit. The Court correctly rejected that argument because TwinSpires has demonstrated that the Attorney General plays a key role in enforcing Michigan's wagering regime.

### A. The IHA Preempts Michigan's Licensing Requirement.

This Court held that "TwinSpires has demonstrated a likelihood of success" on its federal preemption claim under the IHA because "[t]he IHA occupies the field of interstate off-track wagers." ECF No. 19, PageID.466–67. The language of the IHA "is explicit: there is one, exclusive procedure by which entities can accept interstate off-track wagers, and it is the procedure outlined in the IHA." *Id.* at PageID.459. "If states could add additional consent requirements, it would defeat Congress's pronounced purpose to 'prevent interference by one State with the gambling policies of another.'" *Id.* at PageID.460 (quoting 15 U.S.C. § 3001(a)). Under the IHA, "an off-track betting system needs consent from three entities to accept a wager": "(1) the host racing association; (2) the host racing commission; and (3) the off-track racing commission." ECF No. 19, PageID.460. "[I]t is clear the off-track betting system needs consent from these entities only." *Id.* Michigan is none of these, so it has no say in how TwinSpires accepts interstate off-

track wagers in Oregon for races run outside Michigan.[2]  In their stay motion, Defendants seek to relitigate these issues, but Defendants offer no persuasive rebuttal to this Court's holding.

First, Defendants try to frame the IHA as a "narrow" piece of legislation that cannot preempt the field of interstate wagering on horseraces because of states' broad and historic power to regulate gambling.  ECF No. 31, PageID.894–895.  TwinSpires does not dispute that the "regulation of gambling . . . is a legitimate state interest" as far as it goes.  ECF No. 31, PageID.903.  Nor does the IHA, which provides that "the States should have the primary responsibility for determining what forms of gambling may legally take place within their borders."  15 U.S.C. § 3001(a)(1).  But Congress restricted states' authority in the "limited area of interstate off-track wagering on horseraces" in the IHA because Congress determined "the Federal Government should prevent interference by one State with the gambling policies of another."  *Id*. § 3001(a)(2)-(3).  Federal action was necessary in this limited area because interstate wagering led to confusion and disputes over which state's law governed.  Was it the state in which the off-track betting system was licensed?  Was it the state where the person placing the wager resided?  Was it the state where the horse race was conducted?  Or was it some or all of them?  Congress provided clear guidance in the IHA, confining states' authority to regulate only when certain circumstances are present (*i.e.,* the state hosts a race or is the state where wagers are accepted).  And Congress did so "in order to further the horseracing and legal off-track betting industries" not in any one state but across "the United States" as a whole.  *Id.* § 3001(b).

The decision in *Churchill Downs Inc. v. Thoroughbred Horsemen's Group, LLC*, 605 F. Supp. 2d 870 (W.D. Ky. 2009), is not to the contrary.  That decision highlights that the IHA "created

---

[2]  Defendants have abandoned their argument that Michigan is the off-track racing commission, and this Court has already rejected that argument in any event.  ECF No. 19, PageID.461–62.

7

the rules under which racetracks could legally market and facilitate interstate horse race wagering." ECF No. 31, PageID.895 (quoting *Churchill Downs*, 605 F. Supp. 2d at 882). It makes no difference that Congress decided in the IHA to rely on host states and off-track states to provide consent or regulatory oversight. Just as Congress may decide the breadth of the field it regulates when preempting state law, *Exxon Corp. v. Eagerton*, 462 U.S. 176, 184–186 (1983), it may also decide the means to effectuate its policy aims. And, as the *Churchill Downs* decision recognized, Congress in the IHA regulated a precise area—interstate off-track wagering. And it did so by authorizing "state racing commissions" to regulate under the IHA's consent regime. This may reflect less "government regulation and interference" over interstate horserace wagering than Defendants prefer. 605 F. Supp. 2d at 882. But if Defendants want to impose additional regulation, they may seek authorization for it—not by a stay of this Court's order—but from Congress.

Second, Defendants continue to rely on the definition of "interstate off-track wager" in 15 U.S.C. § 3002(3) to argue an interstate wager is impermissible unless it is "legal" or "lawful" under Michigan law. This definition is no help to Defendants. Congress would not have enacted a fourth consent requirement by burying it in a definitional section. If Congress had wanted to require the consent of the State in which the wagerer resides, it would have said so explicitly, by adding it as one of the necessary consents in 15 U.S.C. § 3004(a), rather than making an elliptical reference to "lawful" wagers in the definitions. When Congress said the wagers must be "lawful in each State involved," *id.* § 3002(3), it was referring to "each State involved" in providing the requisite consents—*i.e.*, the State where the wager is accepted, and the State where the horserace is conducted.[3] If Congress wanted to permit states like Michigan to regulate wagers placed by

---

[3] This interpretation hardly makes § 3003 "surplusage," as Defendants contend. ECF No. 31, PageID.896. That provision states that "[n]o person may accept an interstate off-track wager except as provided in this chapter." As this Court has explained, "the plain language of § 3003

8

persons in Michigan, it knew how to do so. For example, in the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"), "unlawful Internet gambling" includes wagers made unlawful "under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 31 U.S.C. § 5362(10)(A). But Congress did not include such a provision in the IHA. In fact, Congress exempted IHA wagers from the restrictions imposed by the UIGEA. 31 U.S.C. § 5362(10)(B)(iii).

In any event, as this Court explained, "pari-mutuel wagers [are] lawful in Michigan." ECF No. 19, PageID.459. "[T]he Michigan legislature permits the pari-mutuel system of wagering on horse races." *Id*. at 454 (citing Mich. Comp. Laws § 431.317(1). The Court explained, too, that even under Defendants' preferred interpretation of § 431.317(1), there is no ban on placing pari-mutuel wagers in Michigan. Instead, "Michigan employs a broad supplier side gambling regulatory scheme." ECF No. 19, PageID.456. For example, Michigan prohibits "tak[ing], receiv[ing], or accept[ing] bets." Mich. Comp. Laws § 750.301. But "Michigan law only prohibits consumer-side conduct once a wager has been accepted." ECF No. 19, PageID.457. Defendants say it is "illogical" to think Michigan did not ban placing a wager, when Michigan bans winning and losing money on wagering. ECF No. 31, PageID.897, n.1. But as this Court has already explained, Michigan's ban on winning and losing does not apply to out-of-state wagers as that would give Michigan law an extraterritorial reach beyond its historic limits. *See State ex rel. Reading v. W. Union Tel. Co*., 57 N.W.2d 537, 539–40 (Mich. 1953). And Michigan law otherwise treats wins and losses from pari-mutuel wagering on horse races as Michigan income, if and only

---

makes clear that the IHA exclusively regulates interstate wagering." ECF No. 19, PageID.459 (quotation marks omitted). It establishes that for those wagers defined in § 3002(3), the IHA is "the exclusive means of regulation rather than a floor from which states may implement supplemental regulation." *Id*.

9

if, the money is won or lost at "a licensed race meeting . . . *located in* [*Michigan*]." Mich. Comp. Laws § 206.110(2)(d) (emphasis added).  Yet, plain on the face of this Court's preliminary injunction order, all the wagers at issue in this case occur *outside* of Michigan's borders.

Third, Defendants pivot to another definition, this time the definition of "off-track betting system" in 15 U.S.C. § 3002(7).  According to Defendants, the fact this definition requires that the off-track betting system be a "business . . . conducted by the State or licensed or otherwise permitted by State law," means that Michigan can establish its own licensing regime and regulate an off-track system like TwinSpires.  ECF No. 31, PageID.900.  But "the State" referenced in 15 U.S.C. § 3002(7) is not just any state, but rather the "state in which a bet is *accepted*.  The off-track betting system does not need consent from the regulating entity for the state in which a bet is *placed*."  ECF No. 19, PageID.461–62.  While Defendants are correct that Michigan has the option to permit wagering "via a State-run off-track betting system; or (2) by utilizing a licensing process for off-track betting systems; or (3) by otherwise permitting off-track betting systems by State law," ECF No. 31, PageID.900, that authority is contingent on Michigan serving as the state in which wagers are "accepted."  But, of course, Michigan is not.

Fourth, Defendants argue that this Court's decision "strips Michigan of primary regulatory authority" in favor of "Oregon's gambling policies."  ECF No. 31, PageID.899.  This Court's decision does no such thing.  Michigan retains authority over wagers placed on races *occurring in Michigan*, as this Court's opinion reiterates.  ECF No. 19, PageID.462.  Thus, the Court's injunction applies only to those wagers placed on races outside of Michigan.  That Oregon exercises regulatory authority over TwinSpires is not due to any aspect of this Court's decision, but instead because Oregon is the off-track betting state under the IHA.  As Defendants note elsewhere, the IHA reflects a "compromise" that Congress struck.  ECF No. 31, PageID.894.  That

10

compromise is one in which both the host state (where the race is run) and the off-track betting state (where the wager is accepted) are granted exclusive regulatory authority under federal law. That compromise, however, leaves no room for states like Michigan, when they just happen to be the resident state of an individual wagerer. ECF No. 19, PageID.462. Again, Defendants' true complaint about Michigan's lack of regulatory authority is not with this Court or this Court's decision or even the regulatory choices of the state of Oregon, but rather, it is with Congress.

## B.  The Attorney General Is A Proper Defendant.

Defendants again argue that the Attorney General should be dismissed from this lawsuit, raising the same argument this Court rejected in its preliminary injunction decision—that any state action is not fairly traceable to her. ECF No. 31, PageID.904–05. Not so. "TwinSpires has properly alleged that the Executive Director and the Attorney General are responsible for enforcing the purportedly unconstitutional actions." ECF No. 19, PageID.450–51. "[A]n injury resulting from the application or threatened application of an unlawful enactment" is fairly traceable to those applying the enactment. *FEC v. Cruz*, 596 U.S. 289, 297 (2022); *id*. at 301. "[H]ere, the Attorney General enforces the penalties that the Executive Director seeks to impose under the MHRL." ECF No. 19, PageID.450. And even if the Attorney General could show a likelihood of success on this argument, it would not justify a stay because there is no dispute that the Executive Director is a proper defendant.

## II.  The Other Stay Factors Weigh In Favor Of TwinSpires.

TwinSpires has shown "a likelihood to succeed on the merits of its constitutional claim," so Defendants "face[] a high hurdle" to show that injunctive relief should be stayed pending appeal. ECF No. 19, PageID.473 (quoting *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023)). Defendants cannot overcome that hurdle, as the other three factors all weigh decisively in favor of denying Defendants' motion for a stay. *Nken*, 556 U.S. at 434. While Defendants have shown no

11

irreparable harm, TwinSpires—as this Court has already determined—faces imminent irreparable injury absent the preliminary injunction. Moreover, enforcing the Constitution's commands is squarely in the public interest.

Defendants will not be irreparably harmed. Defendants delayed nearly a month before seeking this stay. *Compare* ECF No. 20, *with* ECF No. 31. Their "failure to act with greater dispatch . . . counsels against the grant of a stay," *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983) (Blackmun, J., in chambers), and certainly "vitiates much of the force of their allegations of irreparable harm," *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers); *accord Huron Mountain Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 397 (6th Cir. 2013). That (dispositive) problem aside, Defendants make the surprising argument that this Court's order is causing the state a "sharp decrease in revenue." ECF No. 31, PageID.908. But, of course, the Defendants brought about this decline in wagering revenue by ordering TwinSpires and other operators to shut down operations completely by January 1. Moreover, unlike a business's goodwill or its relations with customers, lost revenue is the paradigmatic example of an alleged financial injury that is *not* irreparable. *Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees*, 110 F.4th 870, 889 (6th Cir. 2024). So Defendants have not provided "adequa[te]" proof of irreparable harm. ECF No. 31, PageID.906 (quoting *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). Even if a state were irreparably harmed when its law is enjoined (although, as above, Defendants have made no such showing), that would be true, if and only if, the state's law was constitutional. *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020). Since the MHRL is not, this argument similarly fails to demonstrate any irreparable injury.

By contrast, as this Court has already determined, TwinSpires will face imminent irreparable harm in the absence of a preliminary injunction. *See* ECF No. 19, PageID.470–73. In granting TwinSpires's motion for a preliminary injunction, this Court noted that without injunctive relief, TwinSpires would "lose access to its 18,000 Michigan users," "customer goodwill," and its "competitive position" in the market, and it had already experienced harm to "its reputation." ECF No. 19, PageID.470–71. Without question, a stay of the preliminary injunction would "substantially injure" TwinSpires. *Nken*, 556 U.S. at 434.

As for the public interest, Defendants assert that a stay will "minimize" harm to TwinSpires's competitors and "maintain the confidence that citizens have in the State of Michigan having regulatory control over parimutuel wagering offered via the internet in Michigan." ECF No. 31, PageID.909. But neither unsubstantiated interest outweighs "the public interest . . . in a correct application" of the law. *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) (quotation marks omitted); ECF No. 19, PageID.473. Enjoining a law or policy that violates constitutional rights "is always in the public interest." ECF No. 19, PageID.472–73 (quoting *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 736 (6th Cir. 2021)).

At bottom, even if Defendants had a "strong argument[] about the harms they face and equities involved" (and they do not), TwinSpires assuredly has demonstrated the harms it faces too. *Ohio*, 603 U.S. at 292. In such cases, the Supreme Court has explained "the stay request[] ultimately turns on the merits and the question who is likely to prevail at the end of th[e] litigation." *Id.* As this Court's comprehensive opinion granting the preliminary injunction demonstrates, it is TwinSpires, not Defendants, that is likely to prevail because the IHA preempts Michigan's licensing requirement.

13

## CONCLUSION

For these reasons, this Court should deny Defendants' motion to stay.


March 31, 2025                                                  Respectfully submitted,



                                                                */s/Derek J. Linkous*
Patrick G. Seyferth (P47575)
Derek J. Linkous (P82268)
**BUSH SEYFERTH PLLC**
100 West Big Beaver, Suite 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
linkous@bsplaw.com

Thomas H. Dupree, Jr.
John W. Tienken
**GIBSON, DUNN & CRUTCHER LLP**
1700 M St N.W.
Washington, DC 20036
202-955-8500
TDupree@gibsondunn.com
JTienken@gibsondunn.com

Christine Demana
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Ave., Ste. 2100
Dallas, TX  75201
214-698-3246
CDemana@gibsondunn.com

*Attorneys for Plaintiff*

14

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the word limit of Local Civil Rule 7.3(b), because it contains 4,171 words, excluding the portions of the brief exempted from the word count under Local Civil Rule 7.3(B)(i). The word count was generated using Microsoft Word 2016.

/s/ Derek J. Linkous
Patrick G. Seyferth (P47575)
Derek J. Linkous (P82268)
**BUSH SEYFERTH PLLC**
100 West Big Beaver, Suite 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com