UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHURCHILL DOWNS TECHNOLOGY
INITIATIVES COMPANY,

    Plaintiff,

v.

MICHIGAN GAMING CONTROL
BOARD, et al.,

    Defendants.
_____/

Case No. 1:25-cv-47

Hon. Hala Y. Jarbou

## OPINION

On February 19, 2025, based on its interpretation that the Interstate Horseracing Act ("IHA") occupies the field of interstate off-track wagering on horse races, this Court issued an opinion (ECF No. 19) and order (ECF No. 20) granting Plaintiff Churchill Downs Technology Initiatives Company ("TwinSpires")'s motion for a preliminary injunction (ECF No. 11). The preliminary injunction prevents Defendants Henry L. Williams, Jr., the Executive Director of the Michigan Gaming Control Board ("MGCB"), and Dana Nessel, the Attorney General of the State of Michigan, from enforcing the Michigan Horse Racing Law ("MHRL") licensing requirements—or issuing sanctions under the MHRL—against TwinSpires for accepting wagers from individuals in Michigan on races that take place outside Michigan.

Before the Court is Defendants' motion to stay the preliminary injunction under Rule 62(c), (d). (ECF No. 31.) For the reasons discussed herein, the Court will deny the motion.

### I. LEGAL STANDARD

"Unless the court orders otherwise," a preliminary injunction is "not stayed after being entered, even if an appeal is taken." Fed. R. Civ. P. 62(c). However, while the appeal is pending,

a party may request such a stay. Fed. R. Civ. P. 62(d). In determining whether the Court will issue a stay of its preliminary injunction, the Court "weigh[s] the traditional stay factors." *Brown v. Yost*, ---F.4th---, 2025 WL 1065919, at *4 (6th Cir. 2025) (citing *Doe 1 v. Thornbury*, 75 F.4th 655, 657 (6th Cir. 2023) (per curiam)). The Court asks four questions: "Is the applicant likely to succeed on the merits? Will the applicant be irreparably injured absent a stay? Will a stay injure the other parties? Does the public interest favor a stay?" *Id.* (quoting *Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020) (per curiam)). The party seeking a stay "bears the burden of demonstrating entitlement to a stay." *Id.*

## II. ANALYSIS

The facts of this case have been discussed at length and are not at issue in this motion. Defendants argue that the Court's order granting the preliminary injunction was improper. The Court will address each of the relevant factors for staying a preliminary injunction below.

### A. Likelihood of Success on the Merits

The Court has already determined that Defendants are unlikely to succeed on the merits. *Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, ---F. Supp. 3d.---, 2025 WL 539972, at *15 (W.D. Mich. 2025). In their motion to stay the preliminary injunction, Defendants argue that the Court misapplied and misinterpreted the IHA and the MHRL. The Court disagrees.

#### 1. Field Preemption

First, Defendants argue that the IHA "requires consents from various parties before any track can sell its signal or before any wagering can occur. But the legislation neither creates nor envisions any other supervision or regulatory scheme." (Defs.' Mot. for Stay of Prelim. Inj. 7, ECF No. 31 (quoting *Churchill Downs v. Thoroughbred Horsemen's Grp., LLC*, 605 F. Supp. 2d 870, 882 (W.D. Ky. 2009)). While the *Churchill Downs* opinion that Defendants cite discusses the intersection of the IHA and antitrust law rather than preemption, 605 F. Supp. 2d at 882, the

Court agrees with the sentiment. The IHA requires certain entities to consent to interstate wagers, and no *other* regulation should interfere with the system that the IHA establishes. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *10-11 (citing 15 U.S.C. §§ 3003, 3004). That prohibition on "other" supervision or regulation over interstate off-track wagers applies to the MHRL; the IHA establishes the exclusive regulatory framework for the limited area of interstate off-track wagers on horse races, and the MHRL cannot supplement or supplant it. *Id.* at *10-11, *14.

Next, Defendants state that preemption decisions are guided by two cornerstones: (1) "the purpose of Congress is the ultimate touchstone in every preemption case," and (2) "in all preemption cases, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (cleaned up) (internal citations omitted). The Court's preliminary injunction is consistent with *Wyeth*. Congress made clear its purpose to establish the exclusive procedure to accept an interstate off-track wager. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *10-11 (citing 15 U.S.C. §§ 3003, 3004). Congress also made clear that "[w]hile states retain authority over intrastate gambling, 'the Federal Government should prevent interference by one State with the gambling policies of another,'" and "in the limited area of interstate off-track wagering on horseraces, there is a need for Federal action to ensure States will continue to cooperate with one another." *Id.* at *6 (quoting 15 U.S.C. § 3001(a)). The IHA is that federal action; it discusses the police powers that states retain on intrastate activity and explicitly establishes, in a clear and manifest manner, that the IHA's regulatory scheme supersedes state powers in the limited area of interstate off-track wagers. *Id.* at *6-7, *13-14 (internal citations omitted). *Wyeth* is no obstacle to the Court's preliminary injunction.

Defendants then provide an alternative interpretation of the "interstate off-track wager" definition. They suggest that the Court's interpretation of 15 U.S.C. § 3002(3) renders the subsequent section, 15 U.S.C. § 3003, meaningless. But they do not adequately explain why. They merely state that for 15 U.S.C. § 3003 "to make sense and have effect, the definition of 'interstate off-track wager' cannot mean wagers that satisfy the IHA's procedures." (Defs.' Mot. for Stay of Prelim. Inj. 8.) Not so. As the Court noted, 15 U.S.C. § 3002(3) defines an interstate off-track wager and 15 U.S.C. § 3003 establishes the IHA as the exclusive regulatory scheme over such wagers. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *9-10. In other words, 15 U.S.C. § 3002(3) defines an interstate off-track wager, and 15 U.S.C. § 3003 ensures that no other regulatory schemes can interfere with the procedure Congress established in the IHA. The Court's interpretation hardly renders 15 U.S.C. § 3003 meaningless.

Defendants continue down the track of statutory interpretation for 15 U.S.C. § 3002(3) suggesting that the transmission of pari-mutuel wagers must be lawful in each state involved in the transaction. (Defs.' Mot. for Stay of Prelim. Inj. 8-9.) But to advance their argument, Defendants misquote the statute by rearranging the language and omitting essential punctuation from the definition of interstate off-track wager. Defendants state that the "second clause, which concerns a subset of 'legal wagers,' encompasses 'pari-mutuel wagers . . . placed or transmitted by an individual in one State via telephone or other electronic media and accepted by an off-track betting system in the same or another State, as well as the combination of any pari-mutuel wagering pools' if they are 'lawful in each State involved.'" (*Id.* at 8 (loosely quoting 15 U.S.C. § 3002(3)).) By using an ellipsis after "pari-mutuel," Defendants erase the determinative commas from 15 U.S.C. § 3002(3). As the Court explained, "[d]ue to the offsetting commas, the phrase 'where lawful in each State involved' modifies the term 'pari-mutuel wagers,'" not the text that follows

4

it. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *7 & n.6 (citing The Chicago Manual of Style §§ 6.51, 6.55 (18th ed. 2024)).  While relying solely on punctuation would result in an incomplete statutory analysis, punctuation cannot be ignored; "[s]tatutory construction 'is a holistic endeavor,' . . . and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993).  "A statute's plain meaning must be enforced, of course, and the meaning of a statute will typically heed the commands of its punctuation." *Id.* at 455-56.  Here, punctuation helps clarify Congress's purposeful syntax, and after consulting the punctuation and structure—as well as the plain meaning of the language—in 15 U.S.C. § 3002(3), it is clear that pari-mutuel wagers, generally, must be lawful in the state for the IHA to apply.  *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *7-8 (noting that 15 U.S.C. § 3002(3) "us[es] the noun 'pari-mutuel wagers' as opposed to the verb 'pari-mutuel wagering'").  Defendants' shifting of the phrase "lawful in each state involved" to the end of the definition defies proper analysis of the statute's punctuation and improperly represents the meaning of 15 U.S.C. § 3002(3).[1]

Next, Defendants challenge the Court's holding that pari-mutuel wagers, generally, are lawful in Michigan.  They first reference Mich. Comp. Laws § 431.318, reiterating that "[s]imulcasting by race meeting licensees may be authorized by the racing commissioner subject to the limitations of this section." (Defs.' Mot. for Stay of Prelim. Inj. 9.)  Defendants suggest that this language illustrates that the MHRL "does NOT make a general rule that simulcast interstate parimutuel wagering is lawful in Michigan." *Id.* (emphasis in original).  But this provision deals only with simulcasts, defined as "the live transmission of video and audio signals conveying a

---

[1] The Court assumes this argument was not a bad-faith manipulation of the statute, but Defendants should proceed with caution when rearranging the text without explaining why omitting punctuation and displacing language is warranted, particularly where the Court focused on that punctuation and language in its previous analysis.

5

horse race held either inside or outside of this state to a licensed race meeting in this state." Mich. Comp. Laws § 431.318(8)(c). The Commissioner's authority to allow a licensed race meeting to show a simulcast is separate from the general legality of pari-mutuel wagers in Michigan. Further, the MHRL acknowledges that not all interstate pari-mutuel wagers require simulcasting. The statute recognizes that there exists "simulcasting or intertrack or interstate common pool wagering." Mich. Comp. Laws § 431.317(7). In this provision, the language "simulcasting or intertrack or interstate" constitutes a concise, integrated list of the various types of "common pool wagering." *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 403 (2021) (explaining that the series-qualifier canon applies to lists of this kind) (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2021) (Scalia & Garner)). Because, "[t]he word 'or' is almost always disjunctive," and it "is generally used 'to indicate . . . an alternative,'" *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024), the MHRL recognizes that while there can be simulcast-based common pool wagering, some intertrack or interstate common pool wagering will not have a simulcast. Thus, the Commissioner's authority to grant a simulcasting license does not change the general lawful status of pari-mutuel wagers (a type of common pool wager). Additionally, as the Court explained, if the Commissioner could dictate whether pari-mutuel wagers, generally, were lawful in Michigan, "it would be an improper exercise of legislative power." *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *8 (citing Mich. Const. art. IV, § 1; Mich. Comp. Laws § 431.307(1)(a)). The plain meaning of Mich. Comp. Laws § 431.317(1) made pari-mutuel wagers on horse races lawful in Michigan, but even if it did not, Michigan law does not prohibit *placing* pari-mutuel wagers, and it does not prohibit winning or losing money on wagers that are placed on out-of-state races. *Id.* at *8-10.

Defendants' second attempt to challenge the Court's holding that pari-mutuel wagers are lawful in Michigan relies on the IHA's general purpose to prevent states from interfering with the gambling policies of other states. (Defs.' Mot. for Stay of Prelim. Inj. 10.) According to Defendants, "the Court's opinion denies Michigan's primary responsibility over pari-mutuel wagering involving people in Michigan," and "strips Michigan of primary regulatory authority to protect Michigan residents." (*Id.* at 10-11.) However, in issuing the preliminary injunction order, the Court was careful to preserve Michigan's primary authority over intrastate regulation, as the IHA intends. As the Court noted, "[t]he IHA allows states to outlaw pari-mutuel wagering altogether," and if a state did so, pari-mutuel wagers would not be "lawful" in the state, and the IHA would not apply. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *10, *12, *14. Under the IHA, "States retain 'the option of regulating [pari-mutuel wagering].'" *Id.* at *12 (alteration in original) (quoting *Ky. Div. Horsemen's Benevolent & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1417 (6th Cir. 1994)). The Court also made sure to explain that "[w]hen a race that takes place in Michigan is the subject of an interstate off-track wager, or when an entity *accepts* an interstate off-track wager in Michigan, the MGCB's consent is required." *Id.* at *12 (emphasis in original). Under the Court's preliminary injunction, Michigan retains its primary authority to regulate intrastate activity consistent with the carefully crafted regulatory scheme Congress established via the IHA.

Defendants then offer multiple arguments based on an underlying assumption that Michigan consent is required for TwinSpires to accept interstate off-track wagers that were placed in Michigan.

First, Defendants note that the IHA subjects off-track betting systems to the requirements established in state laws. 15 U.S.C. § 3002(7). The question becomes: with which state laws must

7

off-track betting systems comply? The answer depends on where the wager is accepted and where the race takes place. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *11-12. When TwinSpires accepts an interstate off-track wager, there are three entities from whom consent is required: the host racing association (the entity conducting the horse race), the host racing commission (the regulating entity for the state in which the race takes place), and the off-track racing commission (the regulating entity for the state in which the wager is *accepted*). *Id.* at *11-12 & n.17. These are the only entities TwinSpires needs consent from. *Id.* at *14. Thus, because TwinSpires is licensed in Oregon and accepts wagers in its Oregon-based hub, when it accepts wagers on races that take place outside of Michigan, TwinSpires does not need consent from the MGCB and need not comply with the MHRL requirements. *Id.* The IHA's definition of off-track betting system is consistent with this interpretation, as the off-track betting system (here, TwinSpires) must comply with state laws that govern the entities from which it needs consent under 15 U.S.C. § 3004. Put simply, under the IHA, for wagers placed on races outside of Michigan, TwinSpires does not need Michigan's consent.[2]

Second, Defendants argue that TwinSpires is not an off-track betting system unless it complies with the MHRL. But this argument ignores the plain language of 15 U.S.C. §§ 3003 and 3004. TwinSpires need not comply with the MHRL when it accepts wagers on races outside of Michigan. So long as TwinSpires complies with 15 U.S.C. § 3004, and obtains consent from the appropriate entities in accordance with those state laws, TwinSpires is an off-track betting system under the IHA.

---

[2] This conclusion is based on TwinSpires's current status; if TwinSpires started accepting wagers from a hub in Michigan rather than its current hub in Oregon, the analysis would change.

Third, Defendants argue that "any wager placed by individuals within Michigan's borders can only be accepted by [a] Race Meeting Licensee" or its contracted third-party facilitator. (Defs.' Mot. for Stay of Prelim. Inj. 14.) Defendants rely on language in the MHRL that states: "All wagers must be placed by persons within this state and may be placed only in person at a licensed race meeting or electronically through a licensed third-party facilitator." Mich. Comp. Laws § 431.317(8). In doing so, Defendants seem to imply an extraterritorial effect of this provision, but Defendants do not illustrate the "clear legislative intent" of this extraterritorial application, as is required. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *9 n.13 (citing *Sexton v. Ryder Truck Rental, Inc.*, 320 N.W.2d 843, 854-55 (Mich. 1982)). In fact, the statute indicates otherwise, as these requirements outline restrictions on how in-state race meeting licensees accept wagers; these are not consumer-side regulations. Mich. Comp. Laws § 431.317(11). To the extent that this provision would apply extraterritorially, it would be preempted by the IHA. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *10.

Michigan law is clear: "a bet is made at the time and place where the offer of it is accepted." *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *10 (citing *State ex rel. Reading v. W. Union Tel. Co.*, 57 N.W.2d 537, 539 (Mich. 1953)). The IHA requires TwinSpires obtain consent from only three entities: the horseracing association, the host racing commission, and the off-track racing commission. For races that take place outside of Michigan, TwinSpires does not need MGCB consent. The MHRL requirements seek to add an additional layer of consent when a wager is placed by individuals in Michigan. The IHA preempts these requirements via field preemption. *Id.* at *13-14.

### 2. Conflict Preemption

To argue that the MHRL is not subject to conflict preemption from the IHA, Defendants regurgitate their arguments from the previous section. The Court need not address them twice. As

the Court has already explained, Congress made clear its intention to supersede state powers in the limited area of interstate off-track wagers. 15 U.S.C. §§ 3001, 3003. Additionally, the IHA does not commandeer states, as it regulates private actors. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *13.

### 3. Attorney General as a Proper Defendant

Defendants assert that the Court should not subject the Attorney General to the preliminary injunction. Defendants first argue that TwinSpires lacks standing to sue the Attorney General because TwinSpires lacks an injury that is fairly traceable to the Attorney General. But "an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application." *FEC v. Cruz*, 596 U.S. 289, 297 (2022). And TwinSpires has properly alleged that "the Attorney General enforces the penalties that the Executive Director seeks to impose under the MHRL." *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *6. TwinSpires has standing to sue the Attorney General.

Defendants next argue that the Court "should not act to restrain a criminal prosecution[] when the moving party has an adequate remedy at law." (Defs.' Mot. for Stay of Prelim. Inj. 17 (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971).) The Court will construe this argument as a plea to apply *Younger* abstention, or at least the principles that comprise the doctrine.

Generally, the Court is "obliged to decide cases within the scope of federal jurisdiction." *Aaron v. O'Connor*, 914 F.3d 1010, 1016 (6th Cir. 2019) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). *Younger* abstention, however, is appropriate "when there is an ongoing state criminal prosecution," an ongoing "civil enforcement proceeding that is akin to a criminal prosecution," or a "civil proceeding involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (cleaned up) (internal citations omitted). "The Supreme Court has noted that these three categories are the

'exception[]' rather than the rule." *Id.* (alteration in original) (quoting *Sprint*, 571 U.S. at 73). Generally, *Younger* abstention applies only to state proceedings that are pending when the federal action is filed. *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003).

One state proceeding was pending when TwinSpires filed its federal lawsuit: the administrative proceeding regarding the summary suspension of TwinSpires's MGCB-issued license. Because this proceeding was not a criminal prosecution and was not in furtherance of the state courts' ability to perform their judicial functions, the Court must determine whether this proceeding is akin to a criminal prosecution.

The Court of Appeals recently clarified "that *Sprint* firmly delineates and limits the types of cases that may qualify for *Younger* abstention." *Aaron*, 914 F.3d at 1020 (citing *Sprint*, 571 U.S. at 81). In *Sprint*, the Supreme Court reiterated the "dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Sprint*, 571 U.S. at 81-82 (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). "[I]t has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989). For a civil proceeding to be akin to a criminal prosecution, it must be "'judicial in nature' *from the outset*." *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986) (emphasis added). This involves "an investigation and formal complaint preced[ing] the hearing" that determines any potential sanction for wrongdoing. *Sprint*, 571 U.S. at 81 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433-35 (1982)). When a judicial officer makes the final punitive determination, the proceeding takes on a judicial nature. *Middlesex*, 457 U.S. at 433 (noting that a proceeding is judicial in nature because the decision-maker—the Ethics

11

Committee—is an "arm of the court"); *see also Am. Fam. Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 333 (6th Cir. 2007) (noting that a proceeding is judicial in nature because the courts make the ultimate disciplinary decision).

While the hearing over MGCB's summary suspension of TwinSpires's license shares some features with judicial proceedings (the state is a party and is seeking punishment for previous wrongdoing), this process is not akin to a criminal prosecution. The process did not start with a formal complaint and investigation that preceded a hearing; the first stage was a summary suspension of TwinSpires's license. The investigation and hearing were only available after TwinSpires's punishment was in place, a stark contrast to the protections afforded entities subject to criminal prosecution. Further, the hearing was not conducted by a subset of the judiciary. The hearing provided only a recommendation for administrative action rather than final sanction subject to direct review. (ALJ Proposal for Decision, ECF No. 22-4.) The hearing was an embedded piece of the Racing Commissioner's executive and administrative functions. Thus, it was not akin to criminal prosecution, rendering it outside the scope of *Younger* abstention.

*Sprint* instructs to proceed cautiously when applying *Younger* to non-criminal proceedings, as "[f]ederal courts . . . have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint*, 571 U.S. at 77 (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)). Not all state enforcement proceedings warrant *Younger* abstention, even if the state is acting to protect "a plausibly important state interest." *Id.* at 81-82; *see also New Orleans Pub. Serv., Inc.*, 491 U.S. at 368 (distinguishing executive action from judicial proceedings). When a hearing takes on the nature of an executive branch administrative proceeding, deviating from the processes that are essential to a criminal prosecution, *Younger* abstention is not appropriate.

Nor is *Younger* abstention warranted due to the state court proceedings. TwinSpires filed its claim in this Court before the MGCB filed its action in state court. "[W]here state . . . proceedings are begun against the federal plaintiff[] after the federal complaint is filed," the Court only applies *Younger* abstention "before any proceedings of substance on the merits have taken place in federal court." *Loch*, 337 F.3d at 578. When the Court issued its preliminary injunction, there were no pending state court proceedings—the only other related action was pending in the United States District Court for the Eastern District of Michigan. And now that the Court has progressed through proceedings of substance, *Hawaii Housing Authority*, 467 U.S. at 238 (preliminary injunction is "certainly" a proceeding of substance), *Younger* abstention is inappropriate even though the state court action was *filed* before the Court issued its preliminary injunction. *Fischer v. Thomas*, 78 F.4th 864, 869 (6th Cir. 2023) (explaining that when (1) state court proceedings were not pending when the federal case was filed, (2) the federal court has engaged in proceedings of substance, and (3) the state proceedings have since been enjoined, *Younger* abstention is improper).

Defendants' arguments, based on *Younger*, are not persuasive. The essence of *Younger* is to prevent duplicative proceedings and maintain respect for state-level action. *Younger*, 401 U.S. at 44-45. This Court's preliminary injunction does not create a perpetual bar to any state-level functions, and applying *Younger* now threatens to not only expand the doctrine's intended limited reach, *see Sprint*, 571 U.S. at 81-82, but also permit the type of "duplication of legal proceedings and legal sanctions" that the Supreme Court sought to avoid. *Younger*, 401 U.S. at 44. At no point did the Court's preliminary injunction interfere with pending state action that was akin to a criminal prosecution. Further, as the Supreme Court noted in *Younger*, the Court has a responsibility to preserve the principles of *Ex parte Young*. *Id.* at 45. "[W]here the danger of

13

irreparable loss is both great and immediate," as is the case for TwinSpires considering the consequences of MGCB sanctions, *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *15-17, abstention is inappropriate. Given the procedural posture of this case, in which the state court proceedings were removed to federal court and outside the jurisdiction of this Court when evaluating the preliminary injunction, even if *Younger* abstention was appropriate at any time prior (which the Court questions), it is no longer so. The horses properly left the starting gates in federal court; the race will continue.

### B. Irreparable Injury

Defendants argue that the preliminary injunction prevents Michigan officials from effectuating the MHRL, which amounts to irreparable harm. While this sentiment is valid, the argument is not sound. The Court is not preventing Michigan officials from effectuating the statute in a manner that is consistent with the IHA. The preliminary injunction is limited to wagers that are accepted outside of Michigan for races that take place outside of Michigan. The MHRL remains in effect for wagers accepted in Michigan and for races that occur in Michigan. *Id.* *12, *17.

Defendants also argue that the Michigan horse racing industry, which "consists of Northville Downs, the only remaining race meeting licensee[3] and the Michigan Harness Horsemen's Association," (Defs.' Mot. for Stay of Prelim. Inj. 20), is reliant upon the fees generated from interstate off-track wagering. The Court will not comment on the policy choices that will best support a horse racing industry in Michigan. The Court will, however, uphold the charge of the IHA, which establishes the exclusive procedure by which entities can accept

---

[3] While the facts indicate that Northville Downs is "the only remaining race meeting licensee," and this language does not constitute a list of three separate entities without an Oxford comma, the Court notes that a comma after "licensee" would help clarify that the description applies to "Northville Downs." Offsetting commas help clarify language.

14

interstate off-track wagers.  The MHRL requirements may not be applied to entities that accept wagers outside of Michigan for races that take place outside of Michigan.  *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *14.  It is TwinSpires that stands to face irreparable harm in this matter should the Court lift the preliminary injunction.  *See id.* at *15-17.

### C. Public Benefit

The final consideration is whether a stay would prevent harm to others and advance the public interest.  Defendants argue that the public interest weighs in their favor because lifting the stay would "minimize the harm to other third-party facilitators . . . and maintain the confidence that citizens have in the State of Michigan having regulatory control over parimutuel wagering." (Defs.' Mot. for Stay of Prelim. Inj. 21.)  This conclusory argument is outweighed by the essential interest in "a correct application of the law."  *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *17 (quoting *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023)).  This factor weighs in TwinSpires's favor.

### III. CONCLUSION

Defendants have not met their burden to show entitlement to a stay.  Their arguments are unpersuasive.  Because Defendants are not likely to succeed on the merits, they have not demonstrated that the preliminary injunction has caused irreparable harm, and they have not illustrated that issuing a stay is in the public interest, the Court will deny their motion.  The preliminary injunction remains in effect.

An order consistent with this Opinion will issue.

Dated: April 18, 2025                    /s/ Hala Y. Jarbou
                                          HALA Y. JARBOU
                                          CHIEF UNITED STATES DISTRICT JUDGE