UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHURCHILL DOWNS TECHNOLOGY
INITIATIVES COMPANY,

    Plaintiff,

v.

MICHIGAN GAMING CONTROL
BOARD, et al.,

    Defendants.
_____/

Case No. 1:25-cv-47

Hon. Hala Y. Jarbou

## OPINION

The Court is, at this point, intimately familiar with the lawsuit between Plaintiff Churchill Downs Technology Initiatives Company ("TwinSpires") and Defendants Michigan Gaming Control Board ("MGCB"), MGCB Executive Director Henry L. Williams, Jr. ("Executive Director"), and Attorney General for the State of Michigan Dana Nessel ("Attorney General"). On February 19, 2025, based on its interpretation that the Interstate Horseracing Act ("IHA") occupies the field of interstate off-track wagering on horse races, this Court issued an opinion (ECF No. 19) and order (ECF No. 20) granting TwinSpires's motion for a preliminary injunction (ECF No. 11). The preliminary injunction prevents Defendants Williams and Nessel from enforcing the Michigan Horse Racing Law ("MHRL") licensing requirements—or issuing sanctions under the MHRL—against TwinSpires for accepting wagers placed by individuals in Michigan on races that take place outside Michigan. On April 18, 2025, this Court issued an opinion (ECF No. 36) and order (ECF No. 37) denying Defendants' request to stay the preliminary injunction.

Before the Court is Defendants' motion to dismiss (ECF No. 14), which raises some issues the Court has already addressed. For the reasons discussed herein, the Court will grant in part and deny in part the motion.

## I. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

## II. ANALYSIS

The facts of this case have been discussed at length and are not at issue in this motion. *See Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, ---F. Supp. 3d.---, 2025 WL 539972, at *1-2 (W.D. Mich. Feb. 19, 2025). Defendants argue that TwinSpires fails to meet

jurisdictional and justiciability hurdles in their lawsuit, but also that TwinSpires fails to state a claim upon which relief may be granted.

### A. Cause of Action

Defendants argue that this Court lacks subject matter jurisdiction because TwinSpires failed to plead a federal cause of action. As the Court discussed at length, TwinSpires can proceed under the implied cause of action to enjoin state actors when "federal law immunizes [a party] from state regulation." *Id.* at *3-5 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015)). This "implied cause of action to enjoin state actors is based on common law principles of traditional equity jurisprudence rather than the Constitution (via the Supremacy Clause)." *Id* at *3. While "a federal statute may preclude this type of private enforcement," that is not the case here. *Id.* "Because the IHA did not create an alternative, exclusive remedy for when state actors conflict with federal requirements, and the language of the IHA is far from judicially unadministrable, Congress did not express an intent to foreclose TwinSpires's equitable claims." *Id.* at *4. Thus, TwinSpires may proceed under the implied cause of action for equitable relief.

### B. Jurisdiction Under the IHA

Defendants argue that only a host state, a host racing association, or a horesemen's group can raise a claim under the IHA's cause of action. The Court agrees. But, as the Court previously explained, jurisdiction under the IHA is not necessary for this lawsuit.

TwinSpires is not proceeding under the cause of action outlined in the IHA. The IHA's cause of action "specifically refers to suits related to 'person[s] accepting any interstate off-track wager in violation of [the IHA].'" *Id.* at *5 (alterations in original) (quoting 15 U.S.C. §§ 3005, 3006(a)); *see also Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n, Inc.*, 989 F.2d 1266, 1270 (1st Cir. 1993) (discussing the limited cause of action outlined in the IHA for

3

when a person accepts an interstate off-track wager contrary to the process established in the statute). TwinSpires filed its lawsuit under the implied cause of action for equitable relief against state actors that violate preemptive elements of federal law. The IHA does not interfere with this cause of action. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *4-5.

### C. Lawsuit Against the State

Defendants, citing 15 U.S.C. § 3006(d), argue that the IHA bars this claim against state defendants. Not so. The IHA only prevents plaintiffs from suing a state if they proceed under the cause of action outlined in the IHA. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *5 (citing 15 U.S.C. § 3006(d) ("Nothing in this chapter shall be construed to permit a State to be sued *under this section* other than in accordance with its applicable laws." (emphasis added)). The IHA does not prevent TwinSpires from proceeding under the implied cause for equitable relief against a state actor.

### D. Declaratory Judgment Act

Defendants argue that the Declaratory Judgment Act does not provide a right of action for TwinSpires. However, TwinSpires need not rely on the Declaratory Judgment Act because it proceeds under the established implied cause of action for equitable relief against state actors. And the action before the Court is distinct from *Michigan Corrections Organization v. Michigan Department of Corrections*, 774 F.3d 895, 904-05 (6th Cir. 2014), the case Defendants cite. In *Michigan Corrections Organization*, the statute in question foreclosed the implied cause of action. *Id.* at 903-05. *Michigan Corrections Organization* confirms this Court's approach, as the Court of Appeals reiterated that "[p]rivate parties who act in compliance with federal law may use *Ex parte Young* as a *shield* against the enforcement of contrary (and thus preempted) state laws." *Id.* at 906 (citations omitted).

4

As discussed above (and previously), the IHA does not foreclose the relief TwinSpires seeks. The Declaratory Judgment Act does not prevent TwinSpires from proceeding under the implied cause of action for equitable relief against state actors who seek to enforce preempted state laws.

### E. *Younger* Abstention

Defendants argue that the Court should not entertain TwinSpires's claims due to *Younger* abstention. The Court addressed this issue while rejecting Defendants' motion to stay the preliminary injunction. Contrary to Defendants' assertion, the summary suspension process is not akin to a criminal proceeding, so *Younger* abstention is not appropriate.

As this Court previously noted, abstention under *Younger* is "the 'exception, not the rule." (4/18/2025 Op. 10-11 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013))). "For a civil proceeding to be akin to a criminal prosecution," and thus subject to *Younger* abstention, "it must be 'judicial in nature *from the outset*.'" (*Id.* (cleaned up) (emphasis added) (quoting *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986))). While the Court acknowledges that the MGCB summary suspension process bears some similarities to judicial proceedings, it is not akin to a criminal prosecution. (*Id.* at 12.) "The investigation and hearing were only available after TwinSpires's punishment was in place, a stark contrast to the protections afforded entities subject to criminal prosecution," and "the hearing provided only a recommendation for administrative action rather than final sanction subject to direct review."[1] (*Id.*

---

[1] These features also distinguish the MGCB summary suspension process from the proceedings in *Doe v. University of Kentucky*, 860 F.3d 365, 368-70 (6th Cir. 2017), which Defendants cite as an example of a civil proceeding akin to a prosecution. Note that in *Doe*, the Court of Appeals determined that even though the school's proceeding "lack[ed] all the formalities found in a trial, it contain[ed] enough protections and similarities to qualify as 'akin to criminal prosecutions' for purposes of *Younger*." *Id.* at 370. The Court of Appeals focused on the initial complaint, investigation, notice of charge, and hearing that all took place before issuing a sanction, as well as the opportunity for Doe to raise constitutional concerns. *Id.* at 368-70. Unlike the proceeding in *Doe*, the MGCB's process did not afford TwinSpires these protections and TwinSpires was not able to raise constitutional concerns.

5

(citing ALJ Proposal for Decision, ECF No. 22-4).) Also, contrary to other proceedings that have been deemed judicial in nature, "the hearing [in question] was not conducted by a subset of the judiciary." (*Id.*)

Fundamentally, federal courts need not abstain when the state proceeding constitutes "legislative or executive action." (*Id.* at 11 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989))). And, at its core, the summary suspension process—including the ALJ hearing—is "an embedded piece of the Racing Commissioner's executive and administrative functions." (*Id.* at 12.) Expanding *Younger* into "a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 368. If the MGCB's summary suspension process were akin to a criminal proceeding, then the exception would have swallowed the rule. Consistent with the careful balance *Younger* and its progeny struck in weighing the federal judiciary's obligation to hear cases for which it has jurisdiction, *Sprint*, 571 U.S. at 77, against the principles of comity that uphold federalism, the Court will not abstain in this matter. The MGCB summary suspension process is not akin to a criminal prosecution, so *Younger* abstention does not apply.

### F. Exhaustion of Administrative Remedies

Defendants argue that TwinSpires should have exhausted administrative remedies before filing its lawsuit. They cite *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) to support the principle that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). However, Defendants do not point to any prescribed administrative remedies. As TwinSpires points out, *Woodford* focuses on the Prison Litigation Reform Act, an act of Congress that mandates prisoner-litigants exhaust administrative remedies before filing

6

lawsuits, and it discusses whether an inmate properly satisfied this requirement under the statute. *Id.* at 85. "When Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust.'" *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021) (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)). But where, as here, neither Congress (via the IHA) nor the Michigan legislature (via the MHRL)[2] have required administrative exhaustion for TwinSpires's challenge, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citing *McGee v. United States*, 402 U.S. 479, 483 n.6 (1971)). To determine whether a party should have exhausted potential administrative remedies before pursuing judicial relief, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146.

The Court should not "require[e] resort[ing] to the administrate remedy" if doing so "may occasion undue prejudice." *Id.* at 147. For example, if the administrative remedies present "an unreasonable or indefinite timeframe for administrative action," or if compliance with a reasonable or definite timeframe would result in irreparable harm that judicial consideration could cure, then failure to exhaust is excused. *Id.* Alternatively, "an administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief.'" *Id.* (quoting *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973)). A party need not pursue potential administrative remedies if "an agency . . . may be unable to consider whether to grant relief because

---

[2] The MHRL is silent as to subsequent administrative remedies when a third-party facilitator license is suspended. And even when a race meeting license is suspended, there is no mandatory requirement to exhaust administrative remedies. Mich. Comp. Laws § 431.314(6) ("A suspension or revocation of a race meeting license *may* be appealed under the administrative procedures act of 1969." (emphasis added)); *see also, e.g.*, *Township v. Rice*, 984 N.W.2d 71, 72 (Mich. 2022) (explaining that the term "may" grants "discretion, rather than imposing a mandatory condition").

7

it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." *Id.*

Here, because both aforementioned shortcomings of potential administrative remedies are present, the balance weighs against requiring exhaustion. TwinSpires risked suffering irreparable harm had it waited for the Racing Commissioner to issue a final decision and then subsequently pursue an administrative appeal. *See Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *15-17. Additionally, the potential administrative remedies were inadequate to provide proper relief, as the proceedings were limited to adjudicating compliance with the MHRL, not the constitutionality of the law itself. (ALJ Order Den. Mot. to Adjourn, ECF No. 22-2 ("The administrative tribunal . . . is bound to follow and apply Michigan law and does not have authority to declare that the Horse Racing Law of 1995 is preempted by federal law. . . . [T]he sole issue before this tribunal is whether [TwinSpires] was properly summarily suspended pursuant to state administrative procedures.").) Because TwinSpires was not required to exhaust administrative remedies, and pursuing such remedies would result in irreparable harm and/or not provide a proper resolution to its constitutionality claim, the lack of exhaustion is excused.

### G. Failure to State a Claim

#### 1. Preemption

Defendants argue that TwinSpires has failed to state a claim for preemption. The Court disagrees. TwinSpires alleges that it accepts wagers through its hub located in Oregon. (Compl. ¶¶ 5, 15.) According to that allegation and the Court's interpretation of the IHA, TwinSpires only needs consent from the entity conducting the race, the regulatory entity in the race state, and the regulatory entity of Oregon. *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *11-12, *14. TwinSpires alleges that it obtains consent from those appropriate entities when it accepts wagers on races that take place outside of Michigan. (Compl. ¶¶ 22-23.) TwinSpires also alleges that

8

Defendants have attempted—and will continue to attempt—to require TwinSpires comply with MHRL provisions in order to accept wagers on out of state races. (*Id.* ¶¶ 45, 49.) The Court has determined this attempted enforcement of the MHRL "is akin to adding an additional consent requirement, one that runs contrary to the IHA's exclusive requirements." *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *14. Thus, TwinSpires has alleged facts that state a claim for preemption.

### 2. Dormant Commerce Clause

TwinSpires (predictably) agrees with the Court that due to preemption, Defendants cannot enforce the MHRL licensing requirements for wagers accepted outside of Michigan on races that take place outside of Michigan. But TwinSpires also contends that the dormant Commerce Clause independently provides a bar to Defendants' MHRL enforcement on such wagers. The Court disagrees.

In issuing the preliminary injunction, this Court determined that, due to preemption and an interpretation of the MHRL based on constitutional avoidance, the MHRL licensing requirements could only apply to "wagers that are either placed on races located in Michigan or accepted in Michigan." *Id.* at *15. TwinSpires argues that Defendants' enforcement of the MHRL licensing requirements, as applied to TwinSpires, nonetheless violates the dormant Commerce Clause. But "antidiscrimination principle[s] lie[] at the 'very core' of [the Court's] dormant Commerce Clause jurisprudence." *Id.* at *14 (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023)). "The 'Commerce Clause' prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Id.* (quoting *Nat'l Pork Producers*, 598 U.S. at 369). Even to the extent that Defendants improperly (due to IHA preemption) apply the MHRL licensing requirements to wagers accepted outside of Michigan for races that take place outside of

9

Michigan, "the MHRL does not 'advantage in-state firms or disadvantage out-of-state rivals.'" *Id.* (quoting *Nat'l Pork Producers*, 598 U.S. at 370).

TwinSpires argues that because the MHRL requires third-party facilitators to partner with in-state racetracks, but in-state racetracks need not enter into these partnerships, the out-of-state entities are at a disadvantage. But TwinSpires offers the wrong comparison. All third-party facilitators—regardless of where they are based—face the same requirement to partner with in-state racetracks. The MHRL does not discriminate between in-state and out-of-state entities, it merely treats all third-party facilitators differently from all racetracks. And whether the argument relies upon extraterritorial regulation or the imposition of a local processing requirement, the "essential vice" inherent to a dormant Commerce Clause claim is discrimination. *Nat'l Pork Producers*, 598 U.S. at 373-75, 377-78. "TwinSpires has not demonstrated that Michigan's choice to create separate regulatory schemes for third-party facilitators and racetracks violates the dormant Commerce Clause." *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *14. Nor has TwinSpires alleged facts that demonstrate a substantial burden on interstate commerce that would satisfy the test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). *See Nat'l Pork Producers*, 598 U.S. at at 385 ("Petitioners must plead facts 'plausibly' suggesting a substantial harm to interstate commerce; facts that render that outcome a 'speculative' possibility are not enough."). TwinSpires, the alleged industry leader, does not allege that its competitors ceased operations when threatened with MGCB enforcement, which indicates the burden on commerce is not so substantial. *See id.* (noting that when some entities comply with a regulation, it indicates a lack of substantial burden on commerce). Thus, the Court will grant the motion to dismiss with regard to TwinSpires's claim under the dormant Commerce Clause.

**H. Dismiss MGCB**

Defendants argue that the MGCB and the Attorney General are improper defendants in this case.  As the Court previously stated, the MGCB is immune from this lawsuit via the Eleventh Amendment.  *Churchill Downs Tech. Initiatives*, 2025 WL 539972, at *6.  However, "TwinSpires has properly alleged that the Executive Director and the Attorney General are responsible for enforcing the" MHRL licensing requirements.  *Id.*  The MGCB will be dismissed, but the Attorney General will remain as a defendant.

### III. CONCLUSION

TwinSpires brings this claim under the implied cause of action to enjoin state actors from violating federal law.  It has alleged facts sufficient to state a claim under preemption, but not for a claim under the dormant Commerce Clause.  While the MGCB will be dismissed as a defendant, the Executive Director of the MGCB and the Attorney General remain as defendants in this lawsuit.

An order consistent with this Opinion will issue.

Dated: May 9, 2025                                  /s/ Hala Y. Jarbou
                                                           HALA Y. JARBOU
                                                           CHIEF UNITED STATES DISTRICT JUDGE